126 T.C. No. 9

UNITED STATES TAX COURT

BERNHARD F. AND CYNTHIA G. MANKO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24124-04L.               Filed April 20, 2006.

Ps and R executed a closing agreement covering specific matters relating to the treatment of certain partnership items on Ps' returns.  R assessed Ps' taxes without issuing Ps a deficiency notice.  R then commenced collection action against Ps.  Ps argue that R may not proceed with the proposed collection action because R failed to issue a statutory deficiency notice before R assessed Ps' taxes.

<u>Held</u>:  R may not proceed with collection because R failed to issue a deficiency notice before assessing Ps' taxes.  The requirement to issue a deficiency notice before assessment is not altered by the closing agreement covering the treatment of certain items on Ps' returns for the years at issue.  Accordingly, R may not proceed with collection of Ps' liabilities.

Irwin S. Meyer, for petitioner Bernhard F. Manko.

Hugh Janow, for petitioner Cynthia G. Manko.

Gerard Mackey, for respondent.


OPINION


KROUPA, Judge:  Petitioners seek review under section 6330(d)[1] of respondent's determination to proceed with a proposed levy to collect petitioners' Federal income tax liabilities for 1988 and 1989 (the years at issue).  We are asked to decide whether respondent may proceed with collection of these liabilities, which respondent assessed without first issuing petitioners a notice of deficiency (deficiency notice).  We hold that respondent may not proceed with collection.

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found.  The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioners resided in Lighthouse Point, Florida, at the time they filed the petition.

## Background

Petitioner Bernhard F. Manko (Mr. Manko) was a 99-percent partner in Comco, a partnership not subject to TEFRA proceedings.

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

See sec. 6221. Respondent examined certain items relating to Comco for the taxable years 1987 through 1991 and reached agreement with Mr. Manko and Comco's other partner on these items.

The changes to the Comco items required changes to petitioners' joint Federal income tax returns for the years at issue. To facilitate this process, petitioners agreed to extend the time indefinitely for respondent to assess income taxes for the years at issue. Petitioners and respondent agreed on the treatment of the Comco items on petitioners' returns for the years at issue and memorialized their agreement on Form 906, Closing Agreement on Final Determination Covering Specific Matters (the closing agreement).

The preamble to the closing agreement explains that the parties wish to determine with finality petitioners' distributive share of income, gains, losses, deductions, and credits with respect to Comco for the years at issue. The final paragraph of the closing agreement provides that the agreement does not affect or preclude later adjustments of any item (other than those relating to Comco) for the years at issue.

When the parties executed the closing agreement, respondent was also examining petitioners' returns for the years at issue for issues unrelated to Comco (the non-Comco items). After the parties executed the closing agreement, respondent prepared an

Income Tax Examination Changes, marked it "Copy—Information Only" and sent it to petitioners. This document, prepared 2 years after the closing agreement and almost 7 years after the end of the last year at issue, reflected respondent's computation of petitioners' tax liabilities after the agreed treatment of the Comco items was taken into account.

Respondent then assessed the deficiencies shown in respondent's Income Tax Examination Changes against petitioners for the years at issue without issuing petitioners a deficiency notice. Specifically, respondent assessed a $10,763,212 deficiency for 1988 and a $2,644,240 deficiency for 1989. These assessments did not meet the statutory exceptions to the requirement that a deficiency notice must first be issued before assessment. See sec. 6213(b). Specifically, the assessments did not arise out of mathematical or clerical errors, were not the result of a determination that a tentative carryback or refund adjustment was excessive, and were not based on the receipt of any payment of tax.

After these assessments, respondent continued to alter the amounts petitioners owed for the years at issue. Respondent sent petitioners five subsequent Income Tax Examination Changes from 1996 through 2001. Respondent sent the latest report to petitioners in October 2001, 12 years after the end of the last year at issue and 7 years after the parties executed the closing

agreement. In January 2003, petitioners terminated their special consent to extend the time for respondent to assess tax for the years at issue. Respondent has never issued petitioners a deficiency notice for the years at issue, and petitioners never executed a formal waiver of the restrictions on assessment.

Respondent sent petitioners a Final Notice of Intent to Levy and Your Right to a Hearing with respect to the years at issue, and petitioners timely requested a hearing. Petitioners asserted in their request for a hearing that the proposed levy should not proceed for a variety of reasons. These reasons included that petitioners had never received a deficiency notice, that petitioners had made payments toward the liabilities for the years at issue, and that petitioners had an increased net operating loss for a prior year that would decrease their liability for the years at issue. The parties then held a hearing. Respondent issued petitioners a notice of determination on December 1, 2004 (the determination notice), which sustained the proposed levy for the years at issue. The determination notice stated that petitioners had not raised challenges to the existence or amount of the underlying tax liability. The determination notice concluded that the assessments for the years at issue should not be abated, briefly citing legal opinions in the case file.

Petitioners timely filed a petition with this Court.

## Discussion

We are asked to decide for the first time whether the Commissioner is required to issue a deficiency notice before assessing taxes for years subject to a closing agreement that covers the treatment of only certain items. Petitioners argue that respondent may not proceed with collection because respondent did not issue them a deficiency notice before respondent assessed their taxes. This failure, petitioners argue, precluded them from challenging their income tax liabilities before the assessment and before this levy proceeding. Respondent, on the other hand, argues that a deficiency notice is not required before assessment in all situations. Rather, respondent argues no deficiency notice is required if the changes to a taxpayer's return arise solely from computational adjustments made by applying a closing agreement covering specific matters to the taxpayer's return. We find for petitioners.

We first address our jurisdiction in this case as well as the standard of review.

## I. Jurisdiction and Standard of Review

We have jurisdiction to review a hearing officer's determination in a collection action where the underlying tax liability is of a type over which this Court normally has jurisdiction. Sec. 6330(d)(1)(B); Katz v. Commissioner, 115 T.C.

329, 338-339 (2000).  Respondent has assessed and proposes to collect Federal income taxes for 1988 and 1989 attributable to adjusting the Comco items reported on petitioners' returns.  We generally have jurisdiction to redetermine deficiencies in income taxes and related additions to tax.  See secs. 6211, 6213(a), 6214(a); see also Goza v. Commissioner, 114 T.C. 176, 182 (2000).  We therefore have jurisdiction to review the determination notice in this case.  See Katz v. Commissioner, supra at 339.

Where the underlying tax liability is at issue in a collection action, we review the determination de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).  Where the underlying liability is not at issue, we review the determination for an abuse of discretion.  Goza v. Commissioner, supra at 181-183.  The key facts are fully stipulated and described in the determination notice.  Where, as here, we are faced with a question of law (e.g., whether the Commissioner must issue a deficiency notice before assessing taxes when a closing agreement covers the treatment of certain items on a return for that year), our holding does not depend on the standard of review we apply.  We must reject erroneous views of the law.  See Kendricks v. Commissioner, 124 T.C. 69, 75 (2005) (and the cases cited therein); McCorkle v. Commissioner, 124 T.C. 56, 63 (2005).

II.  Deficiency and Assessment Procedures

Petitioners contend that respondent may not proceed with collection of their tax liabilities because respondent failed to issue a deficiency notice before assessing their taxes.

A.    A Deficiency Notice Is Generally Required Before the Commissioner May Assess a Deficiency

An assessment is an administrative recording of a taxpayer's liability and sets the collection process in motion. Philadelphia & Reading Corp. v. United States, 944 F.2d 1063, 1064 n.1 (3d Cir. 1991).  An assessment is made by recording the liability of the taxpayer in the office of the Secretary.  Sec. 6203.  The purpose of requiring the assessment to be so recorded is to insure both that the Secretary is maintaining proper records and that taxpayers receive a summary of records of their tax liability.  Gentry v. United States, 962 F.2d 555, 556 (6th Cir. 1992).

The Secretary generally may not assess a deficiency in tax unless the Secretary has first mailed a deficiency notice to the taxpayer and allowed the taxpayer to petition the Tax Court for a redetermination.[2]  Sec. 6213(a).  There are certain exceptions to the requirement that a deficiency notice must be issued, however. For example, a deficiency notice is generally not required where

---

[2]A deficiency notice is not required to assess taxes where there is no deficiency.  For example, the Secretary may assess without a deficiency notice the amount of tax shown due on a return.  Sec. 6201(a)(1).

the assessment arises from mathematical or clerical errors, arises from tentative carryback or refund adjustments, or is based on the receipt of a payment of tax.  See sec. 6213(b).  The Commissioner may also assess a deficiency without issuing a deficiency notice if a taxpayer waives the restrictions on assessment.  Sec. 6213(d).

A deficiency notice provides taxpayers certain procedural safeguards.  See Commissioner v. Shapiro, 424 U.S. 614, 616-617 (1976).  A deficiency notice entitles a taxpayer to litigate his or her tax liability without first paying the tax the Commissioner has determined is owing.  Bourekis v. Commissioner, 110 T.C. 20, 27 (1998); McKay v. Commissioner, 89 T.C. 1063, 1067 (1987), affd. 886 F.2d 1237 (9th Cir. 1989); Mulvania v. Commissioner, 81 T.C. 65, 67 (1983).  Deficiency notices have been characterized as "tickets to the Tax Court" affording taxpayers the opportunity to litigate in this forum.  Bourekis v. Commissioner, supra; McKay v. Commissioner, supra; Mulvania v. Commissioner, supra.  A deficiency notice also allows a taxpayer to litigate his or her tax liability before the Commissioner makes an assessment and collection proceedings begin.[3] Commissioner v. Shapiro, supra.

---

[3]A taxpayer may generally dispute his or her liability in collection proceedings only if the taxpayer has not previously had the opportunity to dispute it.  Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180-181 (2000).

The parties agree that respondent did not issue petitioners a deficiency notice, that no statutory exception to the restrictions on assessment applies, and that petitioners have not waived the restrictions on assessment. Accordingly, respondent may not proceed with collection unless, as respondent argues, the closing agreement obviates the need for a deficiency notice.

B. The Closing Agreement Covering Specific Matters Does Not Render Deficiency Notice Unnecessary

1. Types of Closing Agreements

We now address closing agreements. The Commissioner may enter into an agreement with any person regarding his or her liability for any taxable period. Sec. 7121(a). These agreements are final and conclusive and bind the parties as to matters agreed upon. Sec. 7121(b); Urbano v. Commissioner, 122 T.C. 384, 394 (2004). They may be reopened only in exceptional circumstances such as fraud, malfeasance, or misrepresentation of a material fact. Urbano v. Commissioner, supra. All closing agreements shall be executed on forms prescribed by the Internal Revenue Service. Id.; sec. 301.7121-1(d), Proced. & Admin. Regs.

The Commissioner has prescribed two forms of closing agreements, each used in different circumstances. One type of closing agreement is a final determination of a taxpayer's liability for a past taxable year or years. Zaentz v. Commissioner, 90 T.C. 753, 760-761 (1988); Rev. Proc. 68-16, 1968-1 C.B. 770. This type of closing agreement is completed on

Form 866, Agreement as to Final Determination of Tax Liability. Urbano v. Commissioner, supra; Zaentz v. Commissioner, supra.  A second type of closing agreement finally determines one or more separate items affecting the taxpayer's liability and is executed on Form 906.  Urbano v. Commissioner, supra; Zaentz v. Commissioner, supra; see sec. 601.202, Statement of Procedural Rules.

A closing agreement on Form 906, covering specific matters, binds the parties as to the matters agreed upon.  Zaentz v. Commissioner, supra.  This type of closing agreement does not, however, conclusively determine the taxpayer's tax liability for that year.  For example, this type of closing agreement does not bar the Commissioner from subsequently determining that a taxpayer is liable for additions to tax.[4]  Estate of Magarian v. Commissioner, 97 T.C. 1 (1991).

---

[4]A requesting spouse is not entitled to innocent spouse relief when the requesting spouse has entered into a closing agreement that disposes of the same liability.  See sec. 1.6015-1(c)(1), Income Tax Regs.  A closing agreement entered into before the effective date of sec. 6015, however, does not cut off a claim for innocent spouse relief under that section.  Hopkins v. Commissioner, 120 T.C. 451 (2003).  Under the former innocent spouse relief statute, sec. 6013(e), a closing agreement, even one that determined liability only with regard to specific issues, precluded a taxpayer's later claim for innocent spouse relief where the defense was not preserved in the text of the closing agreement.  See Hopkins v. United States, 146 F.3d 729 (9th Cir. 1998).

Petitioners and respondent executed a closing agreement covering specific matters on Form 906.  The specific matters included the treatment of Comco items on petitioners' returns for the years at issue.  The agreement did not cover all items affecting petitioners' tax liability.  In their closing agreement, the parties did not agree to the amount petitioners owed for the years at issue, and, in fact, the closing agreement specifically states that it does not affect or preclude later adjustments of non-Comco items for the years at issue.[5]

### 2.   Effect of Closing Agreement on Deficiency Notice Requirement

We agree that a deficiency notice is not required before assessment if a taxpayer and the Secretary execute a closing agreement on Form 866, finally determining the taxpayer's liability for the year.[6]  Marathon Oil Co. v. United States, 42

---

[5]Respondent was examining petitioners' returns when the parties executed the closing agreement and, over several years, adjusted the amounts petitioners owed several times.  Subsequent adjustments were not only contemplated in the parties' closing agreement.  They actually occurred.

[6]In cases where the parties agree to the amount of the taxpayer's liability, such as those involving Form 866, the taxpayer has already agreed to the deficiency amount and that the deficiency is proper.  Thus, a deficiency notice would provide no additional safeguards and is not required.  Marathon Oil Co. v. United States, 42 Fed. Cl. 267, 280 (1998), affd. 215 F.3d 1343 (Fed. Cir. 1999).  Moreover, a closing agreement may not be reconsidered in the absence of fraud, malfeasance, or misrepresentation of a material fact.  Sec. 7121(b).  Absent these exceptional circumstances, the closing agreement remains binding and could not be reopened in an action to redetermine a

(continued...)

Fed. Cl. 267 (1998), affd. 215 F.3d 1343 (Fed. Cir. 1999); Rev. Proc. 68-16, 1968-1 C.B. 770. Unlike a Form 866, however, the parties here executed a closing agreement on Form 906. The Form 906 executed here covered only specific matters (i.e., the treatment of the Comco items). The parties did not agree to the total amount of petitioners' liabilities for the years at issue.

Respondent argues that he merely computed the effect of the Comco items agreed in the closing agreement on the amounts petitioners reported on their returns. Respondent maintains that in this circumstance, he is not required to issue a deficiency notice before assessing the resulting liability. We disagree.

Respondent may not dispense with a deficiency notice in this situation where petitioners were never allowed to challenge respondent's computations. See Commissioner v. Shapiro, 424 U.S. at 616-617. By failing to issue petitioners a deficiency notice, respondent deprived petitioners of the opportunity of filing a deficiency suit to dispute these computations and to argue that other adjustments should be made to their liabilities for the years at issue. See sec. 6213(a); Commissioner v. Shapiro, supra at 616-617. Respondent unilaterally implemented the closing agreement by applying the terms of the agreement to the amounts

---

⁶(...continued)
deficiency. Id. Accordingly, there would be nothing the taxpayer could challenge. Marathon Oil Co. v. United States, supra at 280.

reported on petitioners' returns and then assessed the resulting liabilities. Because respondent did not issue a deficiency notice, petitioners were never afforded the opportunity to litigate the amount of their tax liabilities before the collection process began. See Commissioner v. Shapiro, supra at 616-617; cf. Marathon Oil Co. v. United States, supra at 280.

### 3. Our Holding Would Not Permit Petitioners To Challenge the Terms of the Closing Agreement

Respondent also argues that he was not required to issue a deficiency notice to petitioners because petitioners are not allowed to challenge the terms of the closing agreement. Respondent reasons that issuing petitioners a deficiency notice and allowing them to file a petition with this Court would frustrate the purpose of the closing agreement as a binding, conclusive agreement that may be reopened only in exceptional circumstances. We disagree.

The closing agreement remains binding on both parties. There has been no fraud, malfeasance, or misrepresentation of a material fact. See sec. 7121(b). A deficiency notice would have allowed petitioners to challenge respondent's determination of petitioners' tax liabilities for the years at issue, but it would not have allowed petitioners to reopen or contest the treatment of the Comco items. The parties agreed to the treatment of the Comco items in the closing agreement. The parties did not agree,

however, to settle all issues related to petitioners' tax liabilities for the years at issue.

We conclude that the closing agreement here, which covers specific matters only, does not absolve respondent from issuing a deficiency notice before assessing petitioners' liabilities. Accordingly, we hold that respondent may not proceed with collection. See sec. 6213(a).

C.  Our Holding Does Not Violate Section 7121(b)(2)

Respondent argues that section 7121(b) requires us to give full effect to the closing agreement in this proceeding. Section 7121(b) provides that a closing agreement (or any assessment in accordance with a closing agreement) shall not be annulled, modified, set aside, or disregarded in any subsequent suit, action or proceeding.

We hold that collection may not proceed because respondent failed to follow the law regarding assessments, not because we are disregarding the parties' closing agreement. See secs. 6212 and 6213. We are not constrained to hold that respondent may proceed with collection simply because the collection proceeding is for a year in which there was a closing agreement between the parties.

III. Conclusion

Respondent assessed petitioners' tax liabilities without first issuing petitioners the statutorily required deficiency

notice.  The existence of a closing agreement covering specific matters for the years at issue does not abrogate respondent's duty to issue petitioners a deficiency notice before assessment. Accordingly, we hold that respondent may not proceed with collection of petitioners' liabilities.

To reflect the foregoing,

<u>Decision will be entered for petitioners</u>.